249 So.2d 55 (1971)
Robert D. FEWOX and Ann C. Fewox, Appellants,
v.
The TALLAHASSEE BANK & TRUST COMPANY, a Florida Banking Corporation, Appellee.
No. N-258.
District Court of Appeal of Florida, First District.
June 1, 1971.
Rehearing Denied June 28, 1971.
W.J. Oven, Jr., Tallahassee, for appellants.
Parker, Foster & Madigan, Tallahassee, for appellee.
SPECTOR, Judge.
Appellants seek reversal of a summary final judgment entered against them in favor of the appellee bank.
This controversy arose out of the financial collapse of Prime Meridian Corporation and associated enterprises. James L. Rhoden, C.S. Vinson and Robert D. Fewox owned all of the stock in the corporation. On February 7, 1968, prior to the corporation's financial catastrophe, Rhoden, Fewox and wife (hereafter referred to as "Fewox"), and Vinson and wife, individually signed a letter to Tallahassee Bank and Trust Company stating:
"In consideration of the Tallahassee Bank and Trust Co. making loans from time to time to the Prime Meridian Corp., all of which inure to the personal benefit of the undersigned, we the undersigned do jointly and severally guarantee repayment of all such loans now outstanding or hereafter created."
Subsequently, two promissory notes (dated June 2, 1968, and June 17, 1968) were executed by Rhoden as President of Prime Meridian in favor of Tallahassee Bank and Trust Company. On the 15th day of July *56 1968, Fewox entered into an extensive agreement with Prime Meridian, Rhoden, and Vinson, in which he sold all of his stock to the corporation and withdrew from active management in same. Fewox notified the bank that he had severed his interest in Prime Meridian. Thereafter, without the knowledge or consent of Fewox and at a time when the financial condition of Prime Meridian was deteriorating, the bank granted the following extensions on both notes: one 60-day extension; three 30-day extensions; and finally, another 60-day extension, thus making both notes due on April 15, 1969, the date this cause was filed. All interest was paid in advance through April 15, 1969, and such interest was accepted by the bank in forbearance of its right to bring immediate suit. On January 1, 1969, the interest rate was increased from seven to eight percent, which increased rate was charged for the last two extensions.
In a lengthy and detailed summary final judgment, the trial judge held each individual defendant liable to the bank in the principal sum of $60,000 plus interest and attorney's fees.
The trial judge in reaching his conclusions held, inter alia:
"4. The Uniform Commercial Code, F.S. Chapter 673, [F.S.A.] is applicable. Under F.S. 673.3-119(1) [F.S.A.] recognition is given to written agreements executed as a part of the same transaction as involves an instrument constituting commercial paper. It provides that the terms of commercial paper may be `affected by any other written agreement executed as part of the same transaction.' The signed letter above mentioned, by its terms, constituted those signing it as guarantors of repayment of loans by the plaintiff to Prime Meridian including those made subsequent to the letter. The words used in the letter, namely, `guarantee repayment' are the equivalent of `payment guaranteed' and thus, pursuant to F.S. 673.3-416(1) [F.S.A.], `engages that if the note is not paid when due he will pay it according to its tenor without resort by the holder to any other party.'
"5. Therefore, the individual defendants will be regarded as occupying the same status as if they had affixed their signature to the notes themselves in the capacity of a guarantor as defined in F.S. 673.3-416(1) [F.S.A.]
* * * * * *
"9. As previously observed the notes specifically provide that the `makers, signers, and endorsers  further consent to any  extensions without further notice.' (Emphasis supplied.) The individual defendants are regarded as having the status equivalent to that of guarantors of the instruments involved and thus are within the category of `signers' as that term is used in the notes. It is shown that the form of the note was selected by the payee, and it is settled law that an agreement of guaranty is construed against the party who prepared or presented same. Miami National Bank v. Fink, Fla.App. 1965, 174 So.2d 38. However, if there is no ambiguity there is no occasion to resort to this rule of construction. The `signers' have consented to `any extensions', which can only mean to embrace one, two, or any number of such extensions, and thus to constitute an `otherwise specified' circumstance which renders inapplicable the limitation of consent to extension to a single extension set forth in F.S. 673.3-118(b) [6] [F.S.A.]. This also constitutes an express `reservation of rights' so as to take F.S. 673.3-606(1) [F.S.A] out of operation to the instruments involved in this case."
The summary judgment entered by the trial court in favor of the appellee should be affirmed, though perhaps not for the reason assigned in the lower court judgment. The disposition of this cause below rests on the interpretation given to the various provisions of the Uniform Commercial *57 Code as applied to the facts reflected by the record on appeal. The rule is well settled in this jurisdiction that a judgment of the lower court will be affirmed if it is correct, even though for a reason other than that assigned by the court below.
The issues raised by the pleadings in this cause may be disposed of by applying the principles of law of guaranty as distinguished from the law of negotiable instruments embodied in Chapter 673, The Uniform Commercial Code. The latter controls the rights and obligations between the maker, Prime Meridian Corporation, and the holder, appellee bank. On the other hand, the law of guaranty controls the rights and obligations as between the guarantors, appellants herein, and the guarantee bank. While the trial court invoked Section 673.119(1), Florida Statutes, F.S.A., as the basis by which appellants' letter of guaranty made them liable on the corporate notes by holding that said letter was a written instrument executed as part of the same transaction giving rise to the notes, the invocation of said statute was unnecessary in order to hold appellants liable for the loan evidenced by the notes. Indeed, it is doubtful that the letter of guaranty is such an "other written agreement" within the meaning of the statute, since both instruments were not between the same obligor and obligee as was the case in Hamilton v. Bero Beach Reserve Mortgage Co., 107 Fla. 65, 144 So. 362 (1932), the rule in which is said to be codified by Section 673.3-119(1), Florida Statutes, F.S.A.
Appellants' liability for the loans evidenced by the corporate notes stems from their clear and unambiguous guarantee to repay all loans then outstanding or thereafter created between the bank and Prime Meridian. The letter recites that all of such loans inure to the benefit of the guarantors. The letter predates the loans in question and there is nothing in it that restricts or limits the promise to repay the loan to the tenor of notes given to evidence the guaranteed loans. It is plain that the loans were the subject of the guaranty, not the notes. Section 673.3-416(1), Florida Statutes, F.S.A., is applicable where the note itself is guaranteed by affixing the words "payment guaranteed" or equivalent words added to a signature on the note itself. The word "signature" as used in Section 673.3-416(1) means a signature made upon an instrument; and no person is liable on an instrument unless his signature appears thereon. Section 673.3-401, Florida Statutes, F.S.A. The word "instrument" as used in the cited statute means a negotiable instrument. Section 673.3-102(1) (e), Florida Statutes, F.S.A. Since appellants' guarantee of the loans evidenced by the promissory notes herein stems from their letter of guaranty and not from their signature on the notes, there is no basis for invoking Section 673.3-416(1), F.S.A., which by its terms limits the engagement of guarantors of the notes (as distinguished from the underlying loans) to the tenor of the notes.
The distinction between guaranty of a loan and guaranty of a note was pointed out in Exchange Natl. Bank of Spokane v. Hunt, 75 Wash. 513, 135 P. 224 (Wash. 1913). There the court, considering the guarantor's obligation under a continuing guaranty, stated:
"There is a difference between an undertaking which guarantees a loan and one which guarantees the payment of a negotiable instrument. The former covers the debt; the latter the evidence thereof. * * * The language of the guaranty expressly covers the obligation and not the evidence thereof."
The letter of guaranty signed by appellants herein imports a continuing guaranty because it contemplates a future course of dealing during an indefinite period and by its terms is intended to cover a series of transactions or a succession of credits and had as its purpose to give Prime Meridian Corporation, the principal debtor, a standing credit to be used by it from time to *58 time. 30 Fla.Jur., Suretyship and Guaranty, § 28, at page 421.
Appellants' contention that they were released or discharged from their guarantee embodied in the letter by the bank's acceptance of interest in lieu of payment in full might have efficacy if appellants guaranteed to pay the notes rather than the loans. If their guarantee arose from their signature on a note, then it is obvious that their engagement would be to pay the note in accordance with its tenor. As it was, however, appellants' guarantee was omnibus in nature since they did not restrict their exposure to the tenor of the notes evidencing the loans.
The judgment appealed is affirmed.
JOHNSON, C.J., concurs.
RAWLS, J., dissents.
RAWLS, Judge (dissents).
In my opinion the order of the Circuit Court should be reversed. The salient point in this case is as follows: Whether the individual defendants should be regarded as occupying the same status as if they had affixed their signatures to the notes.
The trial judge was correct when he defined Fewox as a guarantor. I have difficulty in finding by what authority the trial judge transformed Fewox into a signer. The sole instrument signed by Fewox was the guaranty agreement dated February 7, 1968. There is no evidence that Fewox agreed to any extension of payments of the subject notes. So far as the record discloses, Fewox had never seen the provisions of the notes that the trial judge concluded he had "signed" and did not at any time agree to any extension of payment. Thus, the provisions of F.S. §§ 673.3-118(6) and 673.3-606(1) (a), F.S.A. may well be applicable.
Florida Statute 673.3-119, F.S.A. states at the outset: "As between the obligor and obligee." Fewox was not an obligor; his position was that of a guarantor. The only maker (obligor) of the notes was Prime Meridian and the obligee was the bank. By the express terms of the guaranty agreement, Fewox covenanted to "guarantee repayment of all such loans now outstanding or hereafter created." The trial judge was correct in construing the foregoing language of "guarantee repayment" as being the equivalent of "payment guaranteed" and thus, pursuant to F.S. § 673.3-416(1), F.S.A., "engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party." However, the critical language contained in the last cited statute is "if the instrument is not paid when due."
The trial judge, in concluding his findings, stated: "Furthermore, the language of the guaranty letter specifically guarantees repayment of all loans including those `hereafter created.'" He then reasons that since this language would make Fewox liable for any new loans that it would apply to any loan whose time of payment had been merely extended. Such reasoning is logical and applicable for the period of time that the consideration (inured to the personal benefit of the undersigned) for the guaranty agreement was in force, that being while Fewox was a principal and actively participating in the management of Prime Meridian. Such is not necessarily applicable to the period of time following Fewox's severance from Prime Meridian, the maker of the note, and knowledge of this severance being conveyed to the bank. The judgment being reviewed was rendered in a summary proceeding. Material evidentiary questions which have not been fully explored include the sufficiency of notice to the bank of Fewox's severance as a principal of Prime Meridian, and the deterioration of Prime Meridian's financial structure subsequent to such notice being conveyed to the bank. Ample opportunity should be afforded to the parties to present evidence upon the issues joined in light of *59 a finding that Fewox's status is that of a "guarantor" and not a "signer" of the subject notes.
Fewox was not a signer or maker of the subject promissory notes. Is the guaranty agreement a continuing guaranty rendering Fewox liable? Any discussion of this critical question must be resolved after consideration of all the evidence that would be adduced at a new trial.
I would reverse and remand for further proceedings.