**MARKING SYSTEMS, INC., a Utah Corporation, Plaintiff and Appellant,**

v.

**INTERWEST FILM CORPORATION, Gary E. Meredith, Robert H. Mason, Dillion Inouye, Keith B. McMullin and Interwest General Corporation, a Delaware Corporation, Defendants and Respondents.**

No. 14673.

Supreme Court of Utah.

July 21, 1977.

R. William Bradford, of Bradford, Marsden, Creer & Liljenquist, Salt Lake City, for plaintiff and appellant.

Edward M. Garrett, Raymond A. Hintze, Thomas C. Anderson, George S. Diumenti II, Salt Lake City, for defendants and respondents.

ELLETT, Chief Justice:

In November, 1971, the First Security Bank of Utah agreed to extend credit to Interwest Film Corporation in the amount of $100,000, and as a condition therefor, required and received a general continuing guaranty executed by the individual defendants. The date of the guaranty was November 4, 1971. Thereafter, on January 4, 1972, another loan was made by the bank to Interwest Film Corporation in the amount of $100,000. This loan was renewed several times, viz: April 12, 1972; November 11, 1972; and March 14, 1973. The debt has never been paid unless, as claimed by the defendants, a renewal of the original note by other notes constituted payment of the debt.

After the loan was made but before the last renewal note was signed, the individual guarantors notified the bank that they were revoking their guaranty. When suit was commenced on the note dated March 14, 1973, the guarantors defended on the ground that they had revoked their guaranty before the note in question was signed and, therefore, they were not liable. The trial court granted summary judgments in their favor, and this appeal followed.

The plaintiff is the holder of the note and guaranty by assignment from the bank. By the terms of the guaranty, the respondents jointly and severally guaranteed "payment when due of any and all amounts which the debtor may now owe, or may hereafter owe," not exceeding $100,000. The instrument further provided that notice of revocation would not in anywise release a guarantor from liability contracted prior to the receipt of the notice of revocation. It also provided that the bank could, from time to time, extend the time of payment and renew or modify any of the obligations of the debtor without prior notice to or consent of the guarantors.

The trial judge in his summary judgment misinstructed himself in the law when he stated:

That the renewal of the obligation by new Notes subsequent to the date of revocation of the Guarantee constituted new contracts and new obligations.

There is some split in the authorities as to whether or not the giving of a new note extinguishes the old. The law is stated in 11 Am.Jur.2d, Bills & Notes, as follows:

Section 914 . . . To constitute a novation, there must be, among other elements, a mutual agreement between the creditor and his debtor which is intended to extinguish the old obligation by substituting a new one therefor. For the giving of a new note for an obligation under a prior note to have the effect of discharging liability on the prior note, the new note must be given with that understanding on the part of both the maker of the new note and the holder of the prior note. . . .

\* \* \* \* \* \*

Section 915. Much diversity of opinion has been expressed as to the effect upon the original note or the debt represented thereby of the giving of a renewal note. In many jurisdictions it has been held that the execution, or the mere execution, of a renewal note does not constitute a payment or discharge of the original note, but operates only as an extension of the time of payment, or in other words, that the giving of a renewal note is but a continuation of the debt. Similarly, it has been held that successive notes for the same debt, when not differing in legal effect, may be deemed cumulative securities for the debt. Under these views an instrument given in renewal of a previous one may suspend the right of action on the debt, during its currency, or until it is dishonored by nonacceptance or nonpayment, but if it is not paid at maturity, the creditor may sue on the original instrument, . . .

This Court long ago aligned itself with the weight of authority. In the case of *Deseret National Bank v. Dinwoodey*,[1] we said:

. . . The note of January 18, 1892 (Exhibit B), matured April 17, 1892, and on that day said note was renewed by a new note for like amount (Exhibit F); the note dated February 16, 1892 (Exhibit D), matured May 16, 1892, and was on that day renewed by a new note for a like amount (Exhibit G); and so on, from time to time, as these notes matured, they were renewed by other notes of like amounts. There was no further advancement of money or any new loans at the time of such renewals. The question, therefore, presented for our consideration is, were the renewals of these notes new loans or advances, so as to be included within the terms of the written guaranty (Exhibit A)? . . .

The Court then quoted from and adopted the following statement from 2 Daniel, Neg.Inst. Sec. 1266:

. . . 'When a new bill or note is given in renewal of another bill or note, and the original is retained, the new bill or note operates only as a suspension of the debt evidenced by the original, and is not a satisfaction of it until paid. Such, at least, is the weight of authority.' Section 1266. Continuing, at section 1266a, he says: 'The delivery or surrender to the maker of the old note, upon its being renewed, does not in itself raise the presumption of its extinguishment by the new, it being considered as a conditional surrender, and that its obligation is restored and renewed if the new note be not duly paid; and the same rule applies when the new note has been carried to judgment, but without satisfaction.' Numerous other authorities hold to the same effect.

 There is no claim in the instant case that there was any money advanced to

---

1. 17 Utah 43, 62, 53 P. 215, 221 (1898); See also *First Security Bank of Utah v. Proudfit Sporting Goods Co.*, Utah, 552 P.2d 123 (1976); and *Gray v. Kappos*, 90 Utah 300, 61 P.2d 613 (1936).

Interwest Film Corporation after the notice of revocation of the guaranty was given. The claim is only made that the giving of new notes after revocation constituted new contracts. Such is not the law.

The judgments should be, and it is, reversed and the case remanded for such further proceedings as may be meet and proper, not inconsistent with this opinion.

Costs are awarded to the appellant.

MAUGHAN, J., concurs.

CROCKETT, Justice (concurring in the result):

The complaint in this case under its First Claim, Count One, alleges and seeks recovery upon the promissory note of March 14, 1973; and under Count Two, alleges the signing of the guaranty by the defendants and seeks recovery therefor. It appears to be without dispute that the bank originally loaned $100,000 in reliance on that guaranty. However, it also appears without dispute that the defendants revoked the guarantee, as permitted by its terms, in October of 1972; and thus prior to the execution of the note upon which this lawsuit is based.

On the defendants' Motions for Summary Judgment the court made "findings." It is realized that the court does not properly make findings on a Motion for Summary Judgment. But it is assumed that the court must have meant that its recitals appeared to be the undisputed facts. The "findings" included this:

> 6. That the renewal of the obligation by the new notes subsequent to the date of revocation of the Guaranty *constituted new contracts and new obligations.* [Emphasis added.]

That, of course, is but a statement of a conclusion of law.

I assume it to be a fact that the $100,000 which was advanced by the bank has never been repaid. If so, the "finding" number 6 would be justified only if it appeared that

there was an agreement between the lender (First Security) and the borrower (Interwest Film) to the effect that the prior note was satisfied and a new obligation entered into.

The burden of the defendants' argument as stated in Point 1 of their brief is that "the lower court correctly held that the renewal note signed subsequent to the revocation of the guaranty and without the consent of or notice to the guarantors (defendants) *constituted a new obligation.*" In support thereof, they stress the language of the guaranty that it was only to " . . . *remain* in full *force* and effect *until* such time as the *Bank* shall *receive notice in writing of the revocation . . . .*" They cite authorities to the effect that as guarantors they are entitled to strict construction of the law and of the contract against the Bank (who furnished the Guaranty form) and in defendants' favor.[1] They argue that because of that principle, a guarantor is at least entitled to notice of any substantial change that extends his risk or otherwise increases his burden under the guaranty.[2] And they insist that the Bank did so without notice to them and without their consent.

To be weighed against the foregoing is the argument of the plaintiff which stresses the other provision of the guaranty that it applies to "all renewals, extensions of time, or modifications . . ." of any debt owed the bank prior to revocation of the guaranty. It should be noted that if there is any inconsistency in the provisions thus relied on by the disputants, the defendants are entitled to the benefit of the one which favors them and allows them to rid themselves of the personal guaranty by revocation at any time.

In the deposition of Mr. George Caine, Vice President of the Bank, there is some talk about reliance or non-reliance on the personal guaranties of Defendants in further extensions of credit, and also of oral statements concerning a six-month limita-

---

1. *Pergament v. Herrick Credit Corp.,* 200 N.Y. S.2d 535 (Sup.1960).

2. *In re Ore Ida Potato Products v. United Pacific Insurance Co.,* 87 Idaho 185, 392 P.2d 191 (1964); 74 A.L.R.2d 734 (1960).

tion on the personal guaranty (which I note that I do not regard as proof of the fact).

Consequent to what has been said above, it is my opinion that there is an issue of fact as to whether the subsequent notes given in connection with this matter are in fact but renewals of the same obligation, as the plaintiff contends, or whether there was in fact a new agreement in lieu thereof as contended by the defendants, and as determined by the trial court. It is, therefore, my opinion that the summary judgment for the defendants was improper and that the case should be remanded for further proceedings.

HENRIOD, Retired Justice (dissenting):

Respectfully, I dissent. This is an appeal from a Summary Judgment bottomed on pleadings and the discovery process, saying two guarantors, Mason and McMullin, were relieved from their obligations under an agreement dated November 4, 1971, to guaranty up to $100,000 in loans to defendant, Interwest Film, by First Security Bank, no party here,—but that one way or another, avoided this litigation with an assignment of its lender's interest in the promissory note involved here, to Marking Systems, Inc., whose corporate business is not reflected in the complaint. I believe the trial court should be affirmed.

The briefs discuss some "renewal" and "extension" of promissory notes at some length. *The subject note is neither.* It is a definite, dated demand note and there are no facts whatever in the pleadings, save as reflected in conclusions, indicating other than that the payee relies solely on a note dated March 14, 1973.[1]

The parties stipulated that a written Guaranty of November 4, 1971, was revoked, before the March 14, 1973, note came into being, and nowhere in plaintiff's complaint is it averred that the obligation created on March 14, 1973, was a "renewal" or "extension" of anything.

It states an obligation, effective as of March 14, 1973. It makes no reference whatever to a "renewal" note and claims no other parentage to any pre-existing obligation, for any part or parcel of $100,000. Had the plaintiff pleaded that prior to the written revocation there was due an indebtedness, say, for $5,000, then, by the plain wording of the Guaranty, the signers may have been obligated for $5,000, not $100,000 as alleged was due on March 14, 1973. For aught this record shows, nothing was due by way of liability before March 14, 1973. There appears to be an emasculation or circumvention of the clear terms giving a right to terminate the Guaranty for anything in addition after the date of the revocation, or else a failure to state a cause of action pre-dating March 14, 1973. By adding a so-called second cause that *talks* about a "guaranty" and *talks* about a "renewal," there is nothing by way of affidavit, proffering of Exhibits showing an unpaid obligation, and no statement of account showing what was due *on the day of revocation,* —which is the basic document here. The plaintiff not only fails to show by any kind of discovery that the obligation dated March 14, 1973, was a renewal of anything, —nor that it was anything other than what it said it was. If the hypothetics this author has indulged above happened to be true,—or there existed some other figures of similar import,—the transfer of the note now sued upon to a bona fide purchaser for value, without notice,—would be something akin to a gross injustice and smacking of fraud.

An appeal is made to the reader to consider plain terms lifted from the Guaranty,—*which is not pleaded as the basis for liability here.*[2] It says that the revocation clause, which the plaintiff conveniently shuns as a plague with respect to defense, but espouses with all the affection of a June bridge to establish liability, "shall not

---

1. The note has man-made penned notations on its face showing periodic increased changes in interest rates from $7\frac{1}{2}\%$ to $8\frac{3}{4}\%$ to $9\frac{1}{8}\%$ to $10\frac{1}{4}\%$ to $13\frac{1}{4}\%$ and finally to $13\frac{3}{4}\%$.

2. Only the note itself and the judgment therein are the documents upon which the plaintiff bases its appeal here.

otherwise release any of the guarantors from liability *prior to the receipt of such notice by the bank . . .,*" but that guarantors were liable only "*until such time as the bank shall receive notice in writing of the revocation of same.*" Such notice is conceded before March 14, 1973.

It seems basic that the plaintiff here has chosen its weapon and should rely on its sharpness or dullness for success or failure. It seems to have elected to gore, not an ox, but a ghost, and the record does not seem to lend itself to any kind of remand for any further proceedings.

WILKINS, J., concurs in the views expressed in the dissenting opinion of Mr. Justice HENRIOD, Retired.

HALL, J., does not participate herein.