436 So.2d 403 (1983)
TACO NACHO, INC., Appellant,
v.
HASTY HOUSE RESTAURANTS, INC., Appellee.
No. AM-178.
District Court of Appeal of Florida, First District.
August 19, 1983.
*404 Louise Stanton Warren and Carol Wind Donnelly, Jacksonville, for appellant.
Daniel D. Akel of Blalock, Holbrook & Akel, P.A., Jacksonville, for appellee.
ERVIN, Chief Judge.
Taco Nacho, Inc. (Taco), appeals from a final judgment, entered following a nonjury trial, awarding plaintiff/appellee Hasty House Restaurants, Inc. (Hasty), damages for failure of Taco to make payments to Hasty on a promissory note. Taco also appeals from that portion of the final judgment relating to Taco's counterclaim for breach of a lease agreement by Hasty, contending that the trial court erroneously computed the damages awarded for the breach. We affirm in part and reverse in part.
The promissory note and sublease agreement were executed on December 15, 1978, by Taco to Hasty for the purpose of Taco's operating a new restaurant in Jacksonville. Hasty sold Taco certain restaurant equipment, and, after having paid $5,000 down in cash, Taco gave Hasty a note in the amount of $15,000 in payment. The principal and interest were payable in thirty-six monthly installments of $484, commencing on February 1, 1979. The note provided Hasty the option of accelerating the entire indebtedness upon Taco's default. It further provided that "a default under the sublease executed this date by Maker to Hasty House Restaurants, Inc. shall be a default hereunder."
The sublease was executed on the same date as the note. Under its provisions, Taco was required to pay rent in the sum of $1,000 per month, commencing on February 1, 1979. Taco had the option to renew for an additional five-year term under the same provisions as the original lease-term, which was to expire on December 31, 1982. Although Taco, as sublessee, agreed generally to comply with the conditions of the leases between Hasty and Grace Company, the owner of the premises, it was Hasty's responsibility to continue making its periodic rentals to Grace Company, as required by the main lease agreement with Grace. And, in the event that Hasty failed to pay such amounts, Taco, as sublessee, had "the right to pay ... rental[s] directly to the Lessor and to deduct same from the rent due [Hasty] ..." There was an additional clause which provided that "a default under the promissory note in the amount of $15,000 executed this date by sublessee and payable to sublessor shall be a default under the sublease." (e.s.)
After approximately eight months, or on October 20, 1979, Hasty defaulted on its lease agreement with Grace by failing to pay the monthly rental amounts required; as a consequence of which Grace terminated its lease with Hasty and notified Taco of the termination, advising that all future rentals, in a sum excess of that Taco had agreed to pay to Hasty, should be paid by Taco directly to Grace. Taco was permitted by Grace to continue in possession of the premises on a month-to-month basis. Citing Hasty's default, Taco stopped making *405 payments on the note to Hasty, which then accelerated the indebtedness remaining unpaid, and filed suit against Taco, claiming entitlement to judgment for the balance due, as well as reasonable attorney's fees. Taco counterclaimed for damages caused by Hasty's breach of the sublease agreement.
In answer to Hasty's claim for damages resulting from Taco's failure to make the payments required by the note, Taco replies that the trial court erred in refusing to hold that Hasty's breach of the sublease agreement operated also to release Taco of its obligations under the note. Taco argues that had the court applied the "contemporaneous instrument rule," the note and sublease agreement would have been construed as one agreement, and upon its breach by Hasty, any further performance required of Taco would also be excused.
We disagree that the note and sublease agreement are such that they should be considered as one under the contemporaneous instrument rule. See 6 Fla. Jur.2d Bills and Notes § 114. Compare Policastro v. Rudt, 180 So.2d 472 (Fla. 2d DCA 1965). But even if we were to agree that such instruments should be considered as one agreement, Taco could not, as it seeks to do in this action, enforce the sublease agreement by seeking damages for its breach and, at the same time, inconsistently maintain that it is completely discharged from any further promises under the note. The evidence supported the trial court's treatment of the note and sublease agreement as separate obligations. A contrary result is not indicated by the presence of the above-referred provisions in each of the two instruments providing that Taco's breach of one would be deemed to be a breach of its responsibilities under the other instrument.
Taco also contends that the amount awarded Hasty by the trial court for breach of the note is not supported by the evidence. The final judgment provides for recovery on the note in the sum of $14,035 ($12,934 principal and $1100 interest). Such sum is substantially at variance with the testimony presented by Hasty in support of its damages. The trial court also awarded Hasty $900 as a reasonable attorney's fee. This was attributable to Hasty's prosecution of its claim on the note. Hasty was entitled to a reasonable attorney's fee under the terms of the note. However, it appears that such fee was determined, in part, by the amount of damages awarded Hasty in the final judgment. Since, for the reasons stated, the amount of damages provided in the final judgment will, on remand, have to be refigured by the trial court, the amount awarded for attorney's fees will also be vacated and, on remand, the trial court will also redetermine the amount of attorney's fees to be awarded.
Taco further asserts that the $7,200 damages awarded Taco on its counterclaim for Hasty's breach of the sublease agreement were insufficient in that the damages awarded did not take into consideration additional sums Taco would have to pay for rental of the subject premises after December 31, 1982, the date on which the initial term under the sublease agreement was to expire. If awardable, this element of damages would be attributable to Taco's loss of its option to renew for an additional five-year term at the same rental provided in the sublease agreement. The specific error which Taco asserts the trial court committed was in sustaining Hasty's objection to testimony as to what rental Grace Company would continue to charge Taco for renting the premises after December 31, 1982.[1] Hasty responds that damages for the amounts Taco would be required to pay Grace after the expiration of the lease would be too speculative as the trial occurred on March 23, 1981, and the deadline for Taco under the terms of the lease to *406 furnish notice of its option to renew would not occur until August 31, 1982.
The trial court apparently agreed with Hasty's position. The objection to the admissibility of future damages, and the court's ruling thereon, is specifically reflected in the following portion of the record:
THE WITNESS: Okay. Had we continued to operate under our agreement with Hasty House, our rent would have been $1,000 per month through the termination of the agreement which would have been through 1987.
MR. MASON: Your Honor, then I'd object to him making any projection, because that is if the option were exercised.
The actual lease terminated before  terminated in 1982 with a 5-year option to renew, and there's been no testimony.
And, there can be no testimony as to what they would have done in 1982 as far as extending the option, and their damages should be limited under the breach if the Court finds that there is a breach to the period for the term of the Lease.
MS. WARREN: Your Honor, I think an Option to Lease property is an ownership interest in property, and I think that should be considered here as well as the practical matter of the business is as a growing concern. It's obviously going to be operated at that same location.
THE COURT: What were the terms of the Option?
MS. WARREN: Just that the tenant has the right to do so at the end of the first five year term.
MR. MASON: Your Honor, there's been no showing that they were obviously going to exercise their option.
THE COURT: Let me look at it and see. Excuse me. (Thereupon a brief recess was had.)
MS. WARREN: You were going to make a ruling whether or not he could give testimony on the second part of the lease on the exercise of the option.
THE COURT: And I'm going to sustain the objection. I've reviewed the lease. I think that's too speculative. I don't think the parties are in the position to know what they would be doing.
As it appears from the above, the court's decision that such damages were speculative was based simply on the terms of the lease, not upon the substantiality of evidence concerning what the parties had in fact submitted on the question of whether it was probable that Taco would renew. The proper approach, under the circumstances, was for the trial court, acting as trier of fact, to have considered the existence of the renewal option, regardless of whether it had yet been exercised, and to award damages based upon the option, if it reasonably believed from the evidence that the lessee would have exercised it. Cf. State Road Department of Florida v. Tampa Bay Theaters, Inc., 208 So.2d 485, 487 (Fla. 2d DCA 1968). The lower court had before it the following evidence going to that issue: After being forced to buy $20,000 worth of equipment from Hasty House, most of which was unusable in Taco's operation, Taco purchased an additional $7,000 worth of equipment. Moreover, for the first eight months of the four-year lease, Taco promptly paid all of the $484 monthly installments for which it was obligated under the terms of the $15,000 note, and, after Hasty's default of its obligation to Grace, made all increased monthly rental payments to Grace. The court has not yet ruled on whether such evidence would support a reasonable determination that Taco, had it not been for Hasty's breach, would, within a reasonable probability, renew. It will be given such opportunity on remand.
As a general rule, in construing provisions relating to renewals or extensions of leases, where there is any uncertainty, the tenant is ordinarily favored, and not the landlord. 50 Am.Jur.2d, Landlord and Tenant § 1162, at 48 (1970). As it appears from the excerpted portion of the above record, the answer of the witness under examination, the president of Taco Nacho, Inc., clearly contemplated that the option would be exercised for an additional five-year period. Although it would have been preferable for the appellant's attorney to *407 have obtained a proffer of Taco's intended testimony relating to the sublessee's intention to renew, we fail to see that any such additional testimony was necessary in view of the court's ruling. The rule is clear that if a proffer would be unavailing, failure to proffer the testimony will not preclude the urging of it on appeal. See Seeba v. Bowden, 86 So.2d 432 (Fla. 1956). General Portland Land Development Co. v. Stevens, 291 So.2d 250 (Fla. 4th DCA 1974). We therefore conclude the lower court's preclusion of such evidence on the specific basis that the terms of the lease rendered it too speculative to consider was error.
It also does not clearly appear from the lower court's final judgment whether it credited, for the benefit of Taco, a security deposit in the amount of $2,000, together with all accrued interest, that Taco was required by the lease to place with Hasty as security for the performance of its obligations. The court shall consider these items in redetermining the sum due Taco on its counterclaim.
AFFIRMED in part, REVERSED in part and REMANDED for further consistent proceedings.
MILLS, J., concurs.
NIMMONS, J., concurs in part and dissents in part.
NIMMONS, Judge, concurring in part and dissenting in part.
I concur with the majority's opinion in all respects except that, with respect to Taco's counterclaim for Hasty's breach of the lease agreement, I do not believe that the trial court erred in sustaining Hasty's objection to testimony as to what rental Grace Company would continue to charge Taco for renting the premises after December 31, 1982. Such testimony would have been admissible if Taco had presented sufficient evidence from which it could reasonably be inferred that Taco would have exercised its right under the option to renew for another five-year term at the end of the initial term. However, Taco failed to offer evidence which would have entitled the trial court to find that it would have exercised such option.
Taco presented no evidence that it intended or even wished to continue operating at the subject premises after December 31, 1982. There was no testimony indicating the economic health or growth of Taco's restaurant business which might have been considered as a circumstance supporting an inference that Taco would have renewed its option at the end of the original lease term in December 1982.
I am not persuaded that the evidence outlined in the majority's opinion concerning Taco's purchase of restaurant equipment and Taco's regular rental payments on the leased premises was such that it could reasonably be inferred that Taco, when the time came, would have exercised its right to renew.
There was, therefore, no evidentiary foundation to permit the testimony Taco sought to elicit as to what rental Grace Company would probably charge Taco to continue renting the subject premises after December 31, 1982. In this regard, I respectfully dissent. Otherwise, I fully concur with the majority's opinion.
NOTES
[1] After Hasty's breach of the sublease agreement in October, 1979, Grace, as previously stated, continued to permit Taco to rent the subject premises under an oral agreement at $1100 a month but for no definite term. The damages awarded Taco by the trial court only included amounts attributable to increased rentals Taco would have to pay through the end of the initial four-year term, December 31, 1982.