HERSEY, Judge.
The Bank appeals from an adverse final judgment in favor of the guarantor of a corporate promissory note.
On November 5, 1979, Southeastern X-Ray Corp., by its President, Harold Gray-son, executed a promissory note in the amount of $50,000 to Broward Bank. The loan was unsecured, but Grayson (among others) executed a guarantee of the loan on the same date. Renewal notes dated January 4,1980, April 3,1980, and September 2, 1980, were subsequently executed by Southeastern X-Ray. The renewal notes extended the time for payment of the original obligation, but no additional funds were advanced by the bank.
On May 9, 1980, Grayson wrote to the bank advising that he had resigned as President of Southeastern X-Ray and requesting that his name be removed as a guarantor of Southeastern’s loans. The bank’s reply of May 12, 1980, advised that Gray-son’s liability for the existing loan to Southeastern would continue until the loan was paid, but future loans would be considered without his guaranty.
On January 30, 1981, the bank wrote to Grayson stating that Southeastern X-Ray was in default on its loan and demanding payment in full of the amount still owing, which was approximately $18,000. The bank subsequently filed suit against Southeastern X-Ray, also naming Grayson and other guarantors as defendants. Broward Bank and Grayson went to trial on stipulated facts, resulting in a final judgment for Grayson.
The unconditional, continuing guarantee executed by appellee Grayson provides in pertinent part:
This guarantee ... shall secure all liabilities which the Customer may incur or come under up to and inclusive of the expiration of one month after notice of revocation hereof shall have been given to the Bank in writing, signed by the undersigned.... Provided always that the undersigned ... may in manner aforesaid determine his ... future liability under this guarantee by notice in writing to be given to the Bank....
The issue is whether the renewal notes were mere extensions of the time for payment of the original November 1979 loan, or whether each renewal should be construed as evidencing payment in full of each prior loan and the making of a new loan. If the former, Grayson’s letter to the bank of May 9, 1980, could not relieve him of his obligation as guarantor of the November 1979 loan, as that liability accrued to Southeastern prior to Grayson’s notice of revocation. However, if each renewal was in actuality the making of a new loan by the bank and the satisfaction of the prior loan, Grayson would not be liable as guarantor, since the last “renewal” took place subsequent to his May 1980 revocation letter. Under the terms of the guaran *442 tee, his May 9, 1980, letter relieved him of any future .liability for Southeastern’s loans, and an obligation which arose in September 1980 would thus not be covered by the guarantee.
We find the authorities relied upon by the parties in their briefs, as the parties candidly concede, not to be determinative. Whether one agrees with the majority opinion or the dissent in Fewox v. Tallahassee Bank & Trust Co., 249 So.2d 55 (Fla. 1st DCA 1971), that case is clearly not applicable here even by analogy to secondary considerations. The distinguishing feature is that the guarantors in Fewox never agreed that extensions of time for repayment of a loan could be granted by the bank without affecting their liability. The Grayson guarantee expressly contemplates extensions of time (renewal notes). Fidelity National Bank of So. Miami v. Melo, 366 So.2d 1218 (Fla. 3d DCA 1979), is even more clearly distinguishable. In that case, the guarantor never gave the bank notice of termination of his relationship with the principal debtor nor in any other manner sought to avoid continuing his liability on the guarantee agreement. In a case more nearly on point, but again not dispositive, Miami National Bank v. First Int’l Realty Investment Cory., 364 So.2d 873 (Fla. 3d DCA 1978), the bank made a $50,000 loan to First International Realty, which was guaranteed by the defendant and others. The loan commitment provided for a review of the financial condition of the borrower and guarantors every ninety days and for a renewal of the note at the end of each ninety-day period. Prior to the last renewal, the defendant revoked his guarantee, and the bank removed his name from its list of guarantors. The court affirmed a summary judgment for the guarantor. Two factors distinguish this case from ours.
First, in Miami National Bank the bank completely reviewed and reassessed the borrower’s and guarantors’ financial position prior to granting each renewal. As this is the same procedure a bank would use in making a new loan, the renewals are analogous to new loans. In the instant case, however, there is no evidence that the bank reviewed the parties’ financial condition other than at the time of the original . loan in November 1979. There was no redetermination of the parties’ creditworthiness which could be analogized to the making of a new loan.
Second, in Miami National Bank, the bank removed the defendant’s name from its list of guarantors, while in the instant case the bank specifically advised Mr. Grayson that he was not relieved of liability for Southeastern’s existing loans.
Lacking definitive authority in Florida precedent, we look elsewhere for guidance.
The Utah case of Marking Systems, Inc. v. Interwest Film Cory., 567 P.2d 176 (Utah 1977), is on all fours with the instant case. In Marking Systems, the bank loaned money to Interwest and obtained a general continuing guaranty from the individual defendants. The guaranty provided that notice of revocation would not relieve the guarantors from liability “contracted prior to the receipt of the notice of revocation.” Id. at 177. The loan was renewed three times, but no further sums were advanced subsequent to the notice of revocation.
In holding the guarantors liable on the original note, the court adopted the rule that:
When a new bill or note is given in renewal of another bill or note, and the original is retained, the new bill or note operates only as a suspension of the debt evidenced by the original, and is not a satisfaction of it until paid. Such, at least, is the weight of authority.
Id. at 178. Thus, the renewal notes did not constitute new contracts where “there was no further advancement of money or any new loans at the time of such renewals.” Id.
We adopt this majority view. The liability of Grayson as guarantor of a promissory note in existence on the date of his notice to the payee of termination of his contract of guarantee is not affected by that termination because of the clear and *443 unambiguous terms of the guarantee agreement. Extensions of time for repayment given the payor by the payee, also expressly contemplated by the agreement, are similarly ineffectual to absolve the guarantors of liability. Finally, utilizing the device of a renewal promissory note simply to evidence such an extension of time does not change the result.
The final judgment reflecting a contrary view is reversed and this cause is remanded to the trial court for entry of judgment for the bank.
REVERSED and REMANDED.
GLICKSTEIN and BARKETT, JJ., concur.