Ronald D. JONES and Pamela Jones, Plaintiffs and Respondents,

v.

AMERICAN COIN PORTFOLIOS, INC., a California corporation; Robert G. Holt, as Trustee, L.H. Investment Company, a Utah partnership, and L.H. Investment Group, a Utah corp., Defendants and Appellant.

AMERICAN COIN PORTFOLIOS, INC., a California corporation, and Oakwood Manor Co., a California partnership, Counterclaim and Cross-claim Plaintiffs and Appellants,

v.

Ronald D. JONES, Pamela Jones, Carl E. Barnes, Mary Barnes, L.H. Investment Company, a Utah partnership, L.H. Investment Group, a Utah corporation, G. Lee Eastman, Donald J. Boshard and A. Richard Calder, Counterclaim and Cross-claim Defendants and Respondents.

No. 19003.

Supreme Court of Utah.

Aug. 19, 1985.

As Modified Oct. 21, 1985.

Kent T. Anderson, Salt Lake City, for American Coin Portfolios et al.

David G. Williams, Stanley K. Stall, Salt Lake City, for respondents.

DURHAM, Justice:

This is an appeal from an entry of partial summary judgment in favor of the respondents, Ronald D. Jones and Pamela Jones ("Jones"). Jones brought a quiet title action on a parcel of real property, and the appellants, American Coin Portfolios, Inc. and Oakwood Manor Co. (hereinafter jointly referred to as "American Coin"), counterclaimed to foreclose an alleged lien on the same property. American Coin made a motion for summary judgment against Jones, which the trial court denied. In the order denying American Coin's motion for summary judgment, the trial court found that American Coin had no security interest in the property.

As a result of that finding American Coin stipulated to an entry of a partial summary judgment in favor of Jones. Although there are multiple parties in this case, that partial summary judgment finally adjudicated the respective rights of Jones and American Coin. Therefore, the district court directed the entry of final judgment, finding that there was no just reason for delay pursuant to Rule 54(b), Utah R.Civ.P.

American Coin now seeks to have this Court reverse the partial summary judgment and direct the trial court to enter judgment in its favor or, alternatively, to vacate the partial summary judgment and remand the case for further proceedings. We reverse and direct the trial court to enter judgment in favor of American Coin.

The transactions that created the security interest in question were between American Coin and another defendant to the quiet title action, L.H. Investment Co., which is not a party to this appeal. After a series of transactions between L.H. Invest-

ment and American Coin wherein the property had been used as collateral, the property was conveyed by L.H. Investment to Jones. A description of the transactions between American Coin and L.H. Investment is necessary to understand the underlying issue of this case—that is, whether American Coin has a valid security interest in the property that was conveyed to Jones.

In September 1980, the defendant L.H. Investment owned fee simple title to the subject property. L.H. Investment entered into a commodities purchase agreement dated September 22, 1980, ("the September agreement") with American Coin, under which American Coin advanced $200,000 to L.H. Investment for the purchase of gold. To secure performance under the agreement, L.H. Investment executed a trust deed note and a trust deed on the subject property in favor of American Coin. The trust deed recited that it secured payment of the indebtedness evidenced by a promissory note in the principal sum of $200,000.

Under the September agreement, L.H. Investment was obligated to deliver to American Coin on October 22, 1980, the quantity of gold that $200,000 could purchase at 90.5 percent of the London afternoon price on that day. On October 20, 1980, the original agreement was "rolled over"—that is, L.H. Investment and American Coin entered into an amendment to the September agreement. As part of the amendment, L.H. Investment paid American Coin the $19,000 discount premium, representing the difference between the purchase price specified in the original agreement and the London afternoon price on October 22, 1980. L.H. Investment also agreed in the amendment to pay the balance of the purchase price, $200,000, by delivering to American Coin on November 22, 1980, the quantity of gold which could be purchased for $200,000 at 90.5 percent of the London afternoon price on that date. The October 20, 1980, amendment recited that the September agreement as amended would continue to be secured by the September 1980 trust deed. This same rollover of the indebtedness was repeated on November 22, 1980, and December 22, 1980.

On December 5, 1980, L.H. Investment executed a warranty deed to the subject property to Jones. This deed recites that it is "subject to a Deed of Trust ... in favor of American [Coin] ... in the principal amount of $200,000.00 with interest thereon, recorded September 24, 1980, ...."

On January 22, 1981, American Coin and L.H. Investment entered into a revised commodities purchase agreement and a revised trust deed note. These documents are virtually identical to the September agreement and note except that they provide that the roll-over option is automatic each month if L.H. Investment pays the monthly discount premium, and that the trust deed note shows an amount of $219,000, thus reflecting the $19,000 discount premium payment. The revised agreement recites the prior dealings of the parties, and the September agreement and amendments thereto are attached as exhibits. The revised agreement and note each recite that they continued to be secured by the trust deed.

In March 1981, L.H. Investment defaulted on payment of the indebtedness to American Coin, and American Coin proceeded with steps to foreclose the trust deed. At that time, however, Jones had record title to the property covered by the trust deed, not L.H. Investment. Jones and American Coin are now contesting the validity of the trust deed.

In opposing American Coin's motion for summary judgment, Jones filed a memorandum wherein they argued that L.H. Investment had fully performed under the September agreement and trust deed, and therefore the underlying debt was extinguished. Jones made this assumption without supplying supportive affidavits. Jones then asserted that because the prior debt was extinguished, the revised agreement and note constituted a future advance and was not covered by the trust deed's dragnet clause. Jones argued, therefore, that even though their deed was expressly subject to the September trust deed, the trust

deed did not secure the "new" indebtedness to American Coin. Although Jones's argument that a new debt was created in January 1981 was directly contradicted by evidence before the trial court, this argument was apparently accepted as the basis for its order denying American Coin's motion for summary judgment and for the conclusion that the revised agreement and note are not secured by the trust deed.

American Coin asserts that that conclusion was manifest error. It supports this assertion with four arguments: First, neither the indebtedness owed to American Coin nor its security interest was extinguished by the revised agreement and note. Second, the revised agreement and note did not constitute a future advance. Third, the security interest of American Coin is prior to any interest of Jones under the doctrine of equitable subrogation. And, fourth, the security interest of American Coin is prior to any interest of Jones under the doctrines of equitable subordination and equitable mortgage. We shall treat these arguments in that order.

## I

We concur with American Coin's first argument and hold that, as a matter of law, neither the indebtedness owed to American Coin nor its security interest was extinguished by the revised agreement and note. Where the issue before this Court is one of law, we are not bound by the conclusions of the trial court, and we may determine the issue. *Betenson v. Call Auto and Equipment Sales, Inc.*, Utah, 645 P.2d 684, 686 (1982). Both American Coin and Jones argue on appeal, as they did below, that the issue of extinguishment can be resolved by interpreting the writings between American Coin and L.H. Investments, and we agree.

■ The law applicable to this case is that when a note is given in renewal of another note, it does not create a presumption of extinguishment of the underlying debt. *Marking Systems, Inc. v. Interwest Film Corp.*, Utah, 567 P.2d 176, 178 (1977). This Court has said:

[T]he giving of a new note in renewal of another note [does not] extinguish the debt for which the original note was given unless it clearly appears that it was the intention of the parties that the execution of the new note and the cancellation of the old note should extinguish the debt represented by the old note.

*First Security Bank of Utah v. Proudfit Sporting Goods Co.*, Utah, 552 P.2d 123, 124 (1976) (quoting *Interstate Trust Co. v. Headlund*, 51 Utah 543, 550, 171 P. 515, 517–18 (1918)); *accord Gray v. Kappos*, 90 Utah 300, 304, 61 P.2d 613, 615 (1936).

■ The record contains no evidence that the parties intended to extinguish the September note. The revised agreement expressly makes the September agreement and its amendment a part of the revised agreement, and those prior agreements are attached as exhibits: "All references to this Agreement ... shall deem to refer to and include this Agreement and all such Exhibits and writings. Any breach of default under any provisions of any of such writings shall, for all purposes, constitute a breach or default under this Agreement and all other such writings." Thus, the September agreement and note are not only unextinguished, but by this language, are kept alive under the revised agreement and can be the subject of a default. In addition, the revised agreement specifically states that L.H. Investment "shall *continue to apply* the Two Hundred Thousand Dollars ($200,000.00) advanced by American Coin ..." (emphasis added), thus indicating that the underlying debt of the September agreement had not been paid and that there was no intent to extinguish the original debt. That conclusion also follows from the contents of the only supportive affidavit that was before the trial court on this subject. American Coin's vice president specifically averred, "At no time have the defendants or any of them satisfied or discharged the indebtedness represented by the original Trust Deed Note or the renewed and amended Trust Deed Note."

Jones points to an integration clause in the revised agreements and argues that this clause precludes a conclusion that the revised agreement continued the debt underlying the September agreement. We disagree. As discussed above, the September agreement and its amendments were specifically made a part of the revised agreement. Consequently, the integration clause simply reinforces our conclusion that the September agreement and its note are still unsatisfied.

## II

Our holding that the debt was not extinguished renders meritless the argument by Jones that the revised agreement was a future advance. The claim is that, because the obligation under the September agreement was fully performed and thereby satisfied the original note, the revised agreement must constitute a future advance that should not be secured by the September trust deed's dragnet clause. Jones correctly points out "that dragnet clauses are not favored in equity and that they should be carefully scrutinized and strictly construed." *First Security Bank of Utah v. Shiew*, Utah, 609 P.2d 952, 955 (1980). But there is no need to construe the dragnet clause in this case because the underlying indebtedness to American Coin was never extinguished.

## III

American Coin advances arguments concerning equitable subrogation, equitable subordination, and equitable mortgage pursuant to its assumption that the revised agreement prevented it from claiming an interest under the September trust deed. Having held that the revised agreement does not extinguish the underlying debt, it is unnecessary for us to address these arguments.

This case is remanded for entry of summary judgment in favor of American Coin consistent with the foregoing opinion. Costs to appellant.

HALL, C.J., and STEWART, HOWE and ZIMMERMAN, JJ., concur.