JORGENSON, Judge.
This is an appeal from an amended final judgment. The issue presented on appeal is whether the maker of a promissory note can limit liability for her obligation on that note by relying on the terms of her earlier guaranty of a different extension of credit to her husband. For the reasons which follow, we decline to so hold and, therefore, vacate the amended judgment under review.
Eve Murphy, the defendant below, is the widow of Joseph Murphy, a founder and director of The Coral Gables Bank, plaintiff below. In 1982 Mr. Murphy took out an unsecured “director’s loan” with the bank for $80,700.00. The bank made the loan on the condition that the indebtedness would be paid off or taken off the bank’s books for at least thirty days at the end of each year. The bank arranged for an Indiana bank, The Citizens National Bank of Bed-ford, to make thirty-day loans to each of the bank’s directors so that the directors’ loans could be paid off. The bank then made renewal loans to its directors, the proceeds of which were used to pay off Bedford’s loans after the thirty days had passed. In this fashion, the directors were able to maintain their unsecured loans, and the bank was able to remove the loans from its books for thirty days each year.
In May, 1983, the bank followed its usual procedure. Mr. Murphy renewed his loan of $80,700.00. Mrs. Murphy fulfilled a condition of that loan and executed a guaranty for the $80,700.00 line of credit. The guaranty limited her liability on the 1983 note to $80,700.00. Mr. and Mrs. Murphy then took out the customary loan with Bedford for thirty days to pay off their indebtedness to the bank.
On July 1,1983, Mr. Murphy renewed his loan with the bank for $80,700.00 and paid off Bedford. In June, 1984, Mr. Murphy repeated the procedure and paid off his loan from the bank. The bank gave Mr. Murphy a commitment letter for an $80,-700.00 line of credit and a $10,000.00 check loan and again required Mrs. Murphy to guarantee the loan up to $80,700.00. After he accepted the commitment letter and borrowed the $80,700.00 from Bedford, but before he signed the renewal note with the bank, Mr. Murphy died.
In an effort to assist Mrs. Murphy after the untimely death of her husband and to preserve its arrangement with Bedford, the bank made its renewal loan to Mrs. Murphy. The bank, on July 23, 1984, issued Mrs. Murphy a new commitment for an $80,700.00 revolving line of credit and a $10,000.00 check loan. This extension of credit was to be used to pay off Mr. and Mrs. Murphy’s obligation to Bedford.[1]
*904 Mrs. Murphy accepted the commitment on July 27, 1984, and on August 3, 1984, she executed and delivered to the bank a new master note for $80,700.00. The proceeds of the August 3, 1984, note paid off the Murphys’ indebtedness to Bedford.
The following year, Mrs. Murphy executed and delivered to the bank a renewal note dated August 1, 1985, in the principal sum of $78,541.46. Mrs. Murphy made all payments due under the August 3, 1984, note and the August 1,1985, note up to and including the payment due May 1, 1986.
When the August 1, 1985, note matured on August 1, 1986, Mrs. Murphy defaulted. She made no further payments to the bank. The bank then instituted suit on the note which Mrs. Murphy executed on August 3, 1984, and the renewal note she executed on August 1, 1985.
The trial court entered summary judgment in favor of the bank for a total of $92,417.09. After entry of summary judgment, Mrs. Murphy moved for relief from judgment on the ground that the guaranty she signed in 1983 limited her liability on the 1984 and 1985 notes to a total of $80,-700.00. Following a hearing, the court granted the motion.
The trial court erred when it limited Mrs. Murphy’s liability on the notes she signed in 1984 and 1985 to the terms of the agreement she had executed to guarantee her late husband’s indebtedness to the bank in 1983. Under principles of both common law and the Uniform Commercial Code, the bank is entitled to the full amount due and owing on the judgment originally entered by the trial court, less any amount Mrs. Murphy has paid on that judgment. Mrs. Murphy’s liability is controlled by the terms of the note she executed on . August 3, 1984, and renewed on August 1, 1985.
At common law, a court may consider extrinsic evidence when interpreting ambiguous instruments. When the instruments are unambiguous, the court may not look beyond them.
The rule is well established in this state as well as everywhere else that when competent parties reduce their engagement to writing in terms that create a legal obligation without any uncertainty as to the object or the extent of the engagement as between them, it is conclusively presumed that the whole engagement and the extent and manner of their undertaking is contained in the writing. The writing itself is the evidence of what they meant or intended by signing it. The test of the meaning and intention of the parties is the content of the written document. Ross v. Savage, 66 Fla. 106, 63 So. 148 (1913).
Gendzier v. Bielecki, 97 So.2d 604 (Fla. 1957).
Mrs. Murphy executed the 1983 guaranty on her late husband’s obligation to the bank. When she obligated herself to the bank in 1984 and 1985, her new obligations were clear and unambiguous and made no reference to her 1983 guaranty of a separate obligation which had been discharged.
Under section 3-413 of the Uniform Commercial Code, the maker of an instrument engages that he will pay the instrument according to its tenor at the time of his engagement. § 673.413, Fla.Stat. (1983). Mrs. Murphy agreed to pay the 1984 and 1985 instruments at maturity. She failed to do so and is therefore liable to the bank for the full amount due and owing.
Furthermore, under section 3-119 of the Uniform Commercial Code, only writings executed as part of the same transaction are to be read together as part of a single agreement. § 673.119, Fla.Stat. (1983). The 1983 guaranty and the notes sued upon were not part of the same transaction. See Taco Nacho, Inc. v. Hasty House Restaurants, Inc., 436 So.2d 403 (Fla. 1st DCA 1983) (note and sublease agreement executed same day not part of same transaction); Fewox v. Tallahassee Bank & Trust Co., 249 So.2d 55 (Fla. 1st DCA), cert, denied, 252 So.2d 799 (Fla.1971) (where guarantors different parties than obligor *905 on later note, guaranty not part of same transaction).
Because Mrs. Murphy’s guaranty was a transaction separate from the notes she signed after her husband’s death, she cannot shield herself from fulfilling her obligations on those notes by relying on the terms of the 1983 guaranty.
Mrs. Murphy has filed a cross-appeal from the trial court’s order which allowed the bank to accept her payment of $80,700.00 and still pursue its appeal of the order which limited her liability to that amount. The trial court had jurisdiction to so rule since this court relinquished jurisdiction to the trial court specifically to rule on that question. We therefore find the cross-appeal to be without merit.
We vacate the amended final summary judgment and remand this cause to the trial court with directions to reinstate the original judgment of $92,417.09. Mrs. Murphy is, however, entitled to set off whatever sums she has paid to the bank in connection with the amended final judgment. We also direct the trial court to include in the final judgment costs and fees incurred in enforcing the debts, as well as interest on the debt.
VACATED AND REMANDED WITH DIRECTIONS.

. At the time of Mr. Murphy’s death, his sole indebtedness to the bank was less than $5,000 *904 due and owing on the check loan which was guaranteed by Mrs. Murphy. Mr. Murphy had no other outstanding obligations to the bank at the time of his death.