935 F.2d 1160
 15 UCC Rep.Serv.2d 1035
 In re Andrew J. DURHAM and Cathryne Durham, Debtors.
Andrew J. DURHAM and Cathryne Durham, Plaintiffs-Appellees,
v.
MOUNTAIN AMERICA CREDIT UNION, a Utah corporation, Defendant-Appellant,
The Travelers Indemnity Company, a Connecticut corporation, Defendant.
 No. 90-4011.
 United States Court of Appeals,
Tenth Circuit.
 June 13, 1991.
 
 Mona L. Lyman (Dale R. Kent and William T. Thurman with her on the briefs) of McKay, Burton & Thurman, Salt Lake City, Utah, for defendant-appellant.
 Colin P. King of Wilcox, Dewsnup & King (Gerald H. Suniville of Van Cott, Bagley, Cornwall & McCarthy with him on the brief), Salt Lake City, Utah, for plaintiffs-appellees.
 Before BALDOCK, McWILLIAMS, and BRORBY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 Mountain America Credit Union (Credit Union) appeals a determination that it is an unsecured creditor. We affirm.
 
 
 2
 The underlying facts of this case are undisputed. In 1986, Andrew and Cathryne Durham (Durhams) entered into a structured settlement agreement in compromise of a personal injury claim arising out of a job-related accident sustained by Mr. Durham. Under this agreement Durhams were to receive $2,500 per month for life. Travelers Indemnity Company (Travelers), the tort-feasor's liability carrier, was the other signatory to this settlement agreement. Travelers funded its obligation under the settlement agreement by purchasing a life annuity. Travelers was the owner of this annuity. Durhams decided to open a business and borrowed $150,000 from Credit Union for that purpose. This loan was secured by an assignment that was signed by Durhams, Credit Union, and Travelers. This agreement provided that Durhams assign the amount of $2,024.24 per month to Credit Union for ten years under the structured settlement agreement. Further, Durhams had no right to assign the annuity payments without the consent of Travelers who is the owner.
 
 
 3
 In 1987, Durhams entered into further loan transactions with Credit Union. In February, Durhams borrowed an additional $40,000 and executed a new note in favor of Credit Union with a principal amount of $190,000. In July, they borrowed an additional amount of $24,000 and again executed a new note having a principal amount of $214,000. The subsequent notes called for higher interest rates, larger monthly payments and longer maturities, and failed to reflect any security or collateral.
 
 
 4
 In 1989, Durhams filed for bankruptcy. They claimed the payments due under the settlement agreement were exempt under Utah law, and the trustee abandoned any interest the estate may have had. Durhams listed the $214,000 debt to Credit Union as unsecured.
 
 
 5
 Durhams filed an adversary proceeding, which was transfered to the district court, wherein they sought a declaratory judgment that Credit Union was an unsecured creditor. Durhams sought recovery under 11 U.S.C. Sec. 547 for the payments received by Credit Union during the ninety-day period preceding their bankruptcy filing. Both parties moved for summary judgment. The district court held that as Credit Union failed to obtain a security interest in the payments to become due under the settlement agreement for the July 27, 1987 loan (in the amount of $214,000), and as Credit Union had failed to obtain Travelers' consent to further assignments, the July 27 loan from Credit Union was an unsecured loan subject to discharge in Durhams' bankruptcy proceedings. While not articulated, the underlying basis of the district court's judgment was that the original loan of $150,000 had been extinguished and the assignment accompanying that loan thus lapsed or expired.
 
 
 6
 On appeal, Credit Union sets forth eight issues. The significance of those issues can be summarized as follows: (1) Whether Credit Union is, as a matter of law, the owner of Durhams's rights in the annuity; (2) whether Durhams are equitably estopped from denying the assignment; and (3) whether genuine issues of material fact exist as to the intent of Durhams and Credit Union on the treatment and payment of the loan.
 
 
 7
 Prior to discussing applicable law, some further elaboration concerning the facts is warranted. The three promissory notes are essentially identical in form. On their face none of the documents indicates the creation of a security interest in any property, with the exception that the first two (the $150,000 note and the $190,000 note) show a pledge from Durhams's account with Credit Union in the amount of $50. No one is contending the liability under the notes is collective, only the unpaid amount under the $214,000 note is at issue. None of the three notes or the original assignment provided for future or additional loans, or for the advancement of funds. The original note of $150,000 was not marked "paid." Credit Union treated Durhams's loan as a "share secured loan," and when the second loan of $190,000 was executed, Credit Union, in disbursing the loan proceeds, drew a check to itself in the amount of $150,000. Mr. Bagley, an officer of Credit Union, testified that this action retired and extinguished the $150,000 note and completely paid off the unpaid balance of the original $150,000 loan.
 
 
 8
 In its reply brief to this court, Credit Union argues that Utah's Uniform Commercial Code (U.C.C.) is not applicable to this controversy. In support of its argument, Credit Union contends no security interest was ever created and therefore Credit Union is the owner of Durhams's interest in the annuity by virtue of the statutory provision contained in Utah's insurance code which provides that an owner of any rights in an annuity contract may assign such rights. Utah Code Ann. Sec. 31A-22-412(1). Credit Union's argument is flawed, however, in that the U.C.C. specifically provides that its provisions apply "to any transaction (regardless of its form) which is intended to create a security interest." Utah Code Ann. Sec. 70A-9-102(1)(a). The loan documents executed in regard to the original $150,000 loan clearly evidence Credit Union's intent to create a security interest. There exists no evidence to the contrary. Accordingly, we hold the U.C.C. is applicable to the transactions at issueherein.
 
 
 9
 We now turn our attention to the dispositive issue: Was the original $150,000 debt and accompanying assignment extinguished by the subsequent transactions?
 
 
 10
 The Supreme Court of Utah has held, " '[T]he giving of a new note in renewal of another note [does not] extinguish the debt for which the original note was given unless it clearly appears that it was the intention of the parties that the execution of the new note and the cancellation of the old note should extinguish the debt represented by the old note.' " Jones v. American Coin Portfolios, Inc., 709 P.2d 303, 306 (Utah 1985) (quoting First Security Bank v. Proudfit Sporting Goods Co., 552 P.2d 123, 124 (Utah 1976)); see also Marking Systems, Inc. v. Interwest Film Corp., 567 P.2d 176 (Utah 1977). When a note is given in renewal of another debt, Utah law specifically provides there is no presumption of extinguishment of the underlying debt. Jones, 709 P.2d at 306 (citing Marking Systems, 567 P.2d at 178).
 
 
 11
 In the case before us it is difficult to find that either of the subsequent notes was given in renewal of the original $150,000 note. From the loan proceeds of the second note (of $190,000), Credit Union drew a check to itself which completely paid off the original note (of $150,000). As Credit Union's president testified, this retired and extinguished the note and completely paid off the initial loan. There exists some evidence that might be labeled contrary on this point, this evidence being Credit Union's failure to act, i.e., failure to stamp the original note "paid." However, Mr. Bagley testified the Credit Union does not stamp a loan as "paid"; rather, all that is done is to review documentation to establish the status of the transaction "accounting wise."
 
 
 12
 In reviewing a decision by a district court granting summary judgment, we review de novo. Missouri Pacific R.R. Co. v. Kansas Gas & Elec. Co., 862 F.2d 796, 798 (10th Cir.1988). In addition, all facts and reasonable inferences derived therefrom must be construed in a light most favorable to the party opposing the summary judgment. Anderson v. HHS, 907 F.2d 936, 946-47 (10th Cir.1990) (citing Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir.1988).) Our review of the facts reveals the Credit Union issued itself a check from the loan proceeds, and that a statement of purpose made by its president indicated this action served to completely pay off the initial note. We have searched the record for contrary evidence and have found none.
 
 
 13
 The essence of Credit Union's argument is that it had no intent to release its security. The evidence, however, does not support this alleged intent. Rather, the evidence in this case overwhelmingly supports but one conclusion: The proceeds from the second loan were used to pay off and extinguish the first loan.
 
 
 14
 The assignment was automatically extinguished when the underlying debt was extinguished. Aird Ins. Agency v. Zions First Nat'l Bank, 612 P.2d 341, 344 (Utah 1980). No subsequent assignment or security interest was created nor was such an assignment even attempted.
 
 
 15
 Credit Union also argues Durhams are equitably estopped from denying that the assignment extends to the subsequent notes. The doctrine of equitable estoppel prevents a person from benefitting from his own wrong where an innocent party changed its position or acted in reliance upon the first party's wrongful conduct. The facts of this case fail to support an estoppel claim. No evidence of misconduct by Durhams appears in the record.
 
 
 16
 Finally, Credit Union argues issues of material fact exist that preclude summary judgment. It contends that "while there were three notes, there was in actuality only one loan." Credit Union also claims that at each renewal no money changed hands. This claim is erroneous and unsupported in the record. Credit Union further claims the original note was not stamped "paid"--a claim we have already discussed and disposed of. Credit Union lastly claims the deposition testimony manifests a clear intent that the annuity serve as the source of payment of the $214,000. We find no such intent clear in the depositions.
 
 
 17
 We have sympathy for the position of Credit Union. It loaned $214,000, which was spent by Durhams, and through the bankruptcy laws, Durhams have retained their principal asset. Our sympathy, however, does not allow us to rewrite the law. Accordingly, the judgment of the district court is AFFIRMED.